UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAHMOUD ELSAYED, et al., <br> Plaintiffs, <br> v. <br> DAVID MCALEE, et al., <br> Defendants. | Case No. 18-cv-01256-JST <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** <br><br> Re: ECF No. 29 |

Before the Court is Defendants David McAlee and the City of Palo Alto's motion to dismiss the second amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court will GRANT the motion in part and DENY it in part.

**I.  BACKGROUND**[1]

The plaintiffs in this action are Mahmoud Elsayed ("Elsayed"), his wife Nanette Dumas ("Dumas"), and Mashallah Elsayed ("Mashallah"), their developmentally disabled adult daughter. ECF No. 28 ("SAC") ¶¶ 5-6. Elsayed and Dumas bought a townhouse in Palo Alto, California, in May 2004. *Id.* ¶ 13. They lived there with Mashallah until February of 2015, when the family moved to a new home in Santa Clara, California. *Id.* ¶¶ 13-14. Elsayed and Dumas maintained ownership of the townhouse, and, through a property manager, began renting it out to a Caucasian tenant named Dennis Bruno in April of 2015. *Id.* ¶¶ 14, 59. Elsayed is a Muslim and a naturalized United States citizen of Arabic ethnic origin with a "long history of living and working in the Bay Area with his family." *Id.* ¶¶ 7, 49.

---

[1] For the purposes of deciding this motion, the Court accepts as true the allegations in the second amended complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

Plaintiffs assert their First through Sixth Claims for Relief against David McAlee and Does 1 through 30, all of whom are police officers for the City of Palo Alto. *Id.* ¶ 8. Plaintiffs have not yet ascertained the identities of Does 1 through 30. *Id.* ¶ 9. The Seventh Claim for Relief is asserted against the City of Palo Alto ("City") and Does 31 through 60, other "public or governmental entities also having control, supervision, and training duties over Defendant McAlee and Does 1 through 30," whose identities Plaintiffs have similarly not yet ascertained. *Id.* ¶¶ 10-12. Internal audit statistics suggest that the Palo Alto Police Department has a "history of racial profiling and discrimination in law enforcement practice," and "within 10 years of this incident, the Chief of the Palo Alto Police Department made public comments endorsing or reasonably appearing to endorse racial profiling in [his] officers' practice." *Id.* ¶¶ 94-97.

On the night of March 2, 2016, McAlee and other Doe defendants entered Plaintiffs' home in Santa Clara and arrested Elsayed "in front of his family and in view of his neighbors." *Id.* ¶ 42. The entry and arrest were executed pursuant to a warrant authorizing the arrest of Elsayed for a violation of California Penal Code § 594(b)(1), felony vandalism. *Id.* ¶ 34. The arrest was made in connection with a January 9, 2016 incident witnessed by Delia Tung, a resident of a Palo Alto condominium adjacent to the backyard of Elsayed and Dumas' townhouse. *Id.* ¶¶ 16, 18, 34.

At around 9:00 p.m. on that date, Tung reported seeing "a 'white male' in his 40's" smashing a floodlight on the condominium property, which had recently been flickering directly into the rear of the townhouse. *Id.* ¶¶ 18, 25. "Tung reported that she believed the perpetrator of the act of vandalism to be the person who was residing at [the townhouse]." *Id.* ¶ 19. Dan Held, a maintenance worker at the condominium, viewed security-camera footage from what he believed to be the incident, and he also recognized the perpetrator as the person living at the townhouse. *Id.* ¶ 23. Held believed that Elsayed lived there, and he reported his beliefs and observations to McAlee and Does 1 through 30 during an interview. *Id.* The condominium's owner claimed the cost to restore the light was $536. *Id.* ¶ 21. Under California law, vandalism is a "wobbler" crime, charged as a felony if damages amount to $400 or more, but only as a misdemeanor if less than $400. Cal. Penal Code § 594(b). After his arrest, Elsayed obtained a pretrial dismissal of all criminal charges against him, as well as a judicial finding of factual innocence. *Id.* ¶ 43.

2

From the beginning of the investigation, McAlee wrongly assumed Elsayed was the person who had vandalized the light "and made him the sole focus of the investigation." *Id.* ¶ 22. In the arrest warrant application, McAlee and "other participating officer defendants" made intentional or reckless omissions to establish probable cause that Elsayed had committed the crime. *Id.* ¶ 35. Prior to applying for the warrant, the officer defendants knew: that Elsayed was not living at the townhouse at the time of the incident and he used a property manager to rent it out; that the property manager rented the property to Dennis Bruno, who was living at the townhouse at the time of the incident; and that Bruno was a middle-aged Caucasian male who matched Tung's description of the perpetrator, and who had a history of arrest on alcohol-related charges. *Id.* ¶ 25. The officer defendants also "knew that Mr. Elsayed was represented by an attorney and that his attorney had offered to cooperate and to maintain communications with the Palo Alto Police Department in this investigation." *Id.* ¶ 49. Moreover, they "knew that the amount of damages was less than $400, or they reasonably should have known that the amount of damages was less than $400 but recklessly disregarded or ignored such available information." *Id.* ¶ 30.

About two weeks after the incident, the officer defendants went to the townhouse seeking Elsayed but instead found people staying at the property temporarily; they said they were renting through Airbnb.com from a man named "Den" and provided Dennis Bruno's phone number. *Id.* ¶ 25. Before Elsayed's arrest, the officer defendants possessed an accurate photo of Bruno but they did not show the photo to Held, the maintenance worker, until "well after Mr. Elsayed had already been arrested." *Id.* ¶¶ 28-29. Upon viewing the photo, "Held recanted his earlier identification of Mr. Elsayed as the perpetrator captured on [video] and advised Defendant McAlee that the person in the photograph (Dennis Bruno) looked more like the perpetrator." *Id.* ¶ 29.

Plaintiffs bring the following claims under 42 U.S.C. § 1983: (1) violation of Elsayed's Fourth and Fourteenth Amendment rights by illegal arrest; (2) violation of Elsayed's Fourth and Fourteenth Amendment rights by use of excessive force; (3) violation of Elsayed's Fourteenth Amendment rights by racial, ethnic, and religious discrimination; (4) violation of Dumas and Mashallah's Fourth Amendment rights by illegal entry; (5) violation of Dumas and Mashallah's Fourteenth Amendment rights by abuse of executive power; (6) violation of Elsayed and

3

1  Mashallah's First and Fourteenth Amendment rights by interference with familial relationships;

2  and (7) violation of each Plaintiff's civil rights under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658

3  (1978). *Id.* ¶¶ 4-111.

**II.     JURISDICTION**

The Court has jurisdiction over this case under 28 U.S.C. § 1331 because the complaint brings claims under federal law, as contained in 42 U.S.C. § 1983.

**III.    LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, when accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While this standard is not a probability requirement, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotation marks and citation omitted). In determining whether a plaintiff has met this plausibility standard, the Court accepts all factual allegations as true and construes the pleadings in the light most favorable to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

**IV.    DISCUSSION**

Defendants contend that (1) under Plaintiffs' First Claim for Relief, Elsayed's Fourteenth Amendment claims based on his arrest should be dismissed because they are properly determined under the Fourth Amendment; (2) under Plaintiffs' Second Claim for Relief, Elsayed's Fourth Amendment excessive force claim should be dismissed because the complaint fails to state an excessive force claim separate from Elsayed's claim of false arrest; (3) under Plaintiffs' Third Claim for Relief, Elsayed's allegations fail to state a plausible claim of discriminatory intent or motive; and (4) under Plaintiffs' Sixth Claim for Relief, Elsayed's First and Fourteenth Amendment claims based on his arrest should be dismissed because they, too, are properly determined under the Fourth Amendment. ECF No. 29 at 4, 6-9. The Court addresses these arguments in turn.

### A. Fourteenth Amendment False Arrest Claim

Plaintiffs assert their First Claim for Relief for Illegal Arrest under 42 U.S.C. § 1983 based on underlying violations of the Fourth and Fourteenth Amendments. At this stage, Defendants do not challenge Plaintiffs' Fourth Amendment false arrest claim. See ECF No. 29 at 4. But Defendants urge that because false arrest claims are properly brought under the Fourth Amendment, Plaintiffs may not also plead their false arrest claim under the Fourteenth. *Id.* at 9.

"If a constitutional claim is covered by a specific constitutional provision, such as the Fourth . . . Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). "Petitioner asks us to recognize a substantive right under the Due Process Clause of the Fourteenth Amendment to be free from criminal prosecution except upon probable cause. We decline to do so." *Albright v. Oliver*, 510 U.S. 266, 268 (1994) (upholding dismissal of Fourteenth Amendment claims based on arrest warrant allegedly issued without probable cause). Accordingly, Plaintiffs' assertions that the police lacked probable cause to arrest Elsayed are properly pled under the Fourth Amendment, not the Fourteenth.

The Court DISMISSES Plaintiffs' First Claim for Relief, as asserted under the Fourteenth Amendment, without leave to amend. *See Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1088 (9th Cir. 2002) ("Because any amendment would be futile, there is no need to prolong the litigation by permitting further amendment."). Defendants do not challenge Plaintiffs' First Claim for Relief under the Fourth Amendment, and that portion of his false arrest claim still stands.

### B. Fourth and Fourteenth Amendment Excessive Force Claims

Similarly, Plaintiffs plead their Second Claim for Relief for Excessive Force based on underlying violations of the Fourth and Fourteenth Amendments. Plaintiffs contend that the police's action in arresting Elsayed in his home in front of his family was unreasonable because an arrest was unnecessary: Elsayed was represented by an attorney and had offered to cooperate; the police could have set up a self-surrender appointment; Elsayed could have been evaluated for release on his own recognizance so that he would never have been taken into custody. Thus, Plaintiffs contend, the police's action in arresting Elsayed unannounced in front of his family

constituted the use of excessive force. ECF No. 28 ¶¶ 48-54.

Plaintiffs' claim fails as a matter of law. "Because the excessive force and false arrest factual inquiries are distinct, establishing a lack of probable cause to make an arrest does not establish an excessive force claim, and vice-versa." *Beier v. City of Lewiston*, 354 F.3d 1058, 1064 (9th Cir. 2004). Here, Plaintiffs attempt to collapse the two claims, alleging that the officer defendants "chose to carry out the arrest of Mr. Elsayed with excessive force and the intent to inflict the most harm and damage to Mr. Elsayed, including . . . seeking a felony arrest warrant without factual basis to support the allegation that the conduct at issue constituted a felony." ECF No. 28 ¶ 61. But "[j]ust [alleg]ing lack of probable cause for the arrest . . . does not establish that the police used excessive force, or, indeed, any force." *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1024 (9th Cir. 2015); *see Mattos v. Agarano*, 661 F.3d 433, 443 n.4 (9th Cir. 2011) (rejecting plaintiff's argument that "*any* amount of force against her" was excessive if the officers did not have probable cause).

Moreover, Plaintiffs have made no allegation that the police used unreasonable physical force – or indeed, any force whatsoever – in arresting Elsayed. Instead, they allege that the officer defendants' "action and decision of arresting Mahmoud Elsayed at his home, at night, in front of his family and in view of his neighbors, constituted the use of excessive force in executing the arrest warrant." ECF No. 28 ¶ 54. Plaintiffs have cited no case where an excessive force claim survived a motion to dismiss in the absence of any allegation of physical force employed by officers, and where the alleged harm was merely reputational. Instead, for example, Plaintiffs point to *Bryan v. MacPherson*, 630 F.3d 805 (9th Cir. 2010), where the Ninth Circuit held that the use of a Taser stun gun in dart mode "constitute[d] an intermediate, significant level of force that must be justified by the governmental interest involved." *Id.* at 826. Similarly, in *Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005), the Ninth Circuit held that a jury could have found that the use of pepper spray and a police service dog was excessive. *Id.* at 696. Finally, in *Robinson v. Solano County*, 278 F.3d 1007 (9th Cir. 2002), the Ninth Circuit found that the plaintiff had adequately alleged an excessive force claim where officers pointed a gun at his head at close range and he feared for his life. *Id.* at 1013-15. These cases, and the other cases Plaintiffs cite, allege

6

excessive force and involve more than the simple act of taking a defendant into custody.

Plaintiffs' case is different. They do not allege that officers used excessive force or that the length of Elsayed's post-arrest detention was unreasonable. They allege only that officers could have done something to bring Elsayed before the court other than arrest him. Because that claim is not cognizable, the Court DISMISSES Plaintiffs' Second Claim for Relief without leave to amend. *See Chaset*, 300 F.3d at 1088.

### C. Fourteenth Amendment Racial, Ethnic, and Religious Discrimination Claims

Defendants also move to dismiss Plaintiffs' Third Claim for Relief for racial, ethnic, and religious discrimination in violation of 42 U.S.C. § 1983. Defendants argue that Plaintiffs fail to identify any conduct or statement by officers showing discriminatory motive. Instead, the complaint alleges only that the sole "reasonable explanation for [officers'] decisions and actions . . . [was that] Mr. Elsayed was an Arab-American and a Muslim, as opposed to the much more likely suspect, Dennis Bruno, the Caucasian male." ECF No. 28 ¶ 62.

These allegations are insufficient. "To state a claim for violation of Equal Protection under the Fourteenth Amendment, a plaintiff must allege that the individual defendants, acting under color of state law 'acted in a discriminatory manner and that the discrimination was intentional.'" *Harris v. Clearlake Police Dep't*, No. 12-0864-YGR, 2012 WL 3042942, at \*8 (N.D. Cal. July 25, 2012) (quoting *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000)). Although the SAC offers facts to support the allegation that the evidence known to the officers pointed to Bruno more than Elsayed, Plaintiffs allege nothing to suggest the officer defendants acted with the intent to discriminate. The mere assertion that "there is no reasonable explanation for their decisions and actions other than the fact that they had acted . . . solely or primarily because Mr. Elsayed was an Arab-American and a Muslim, as opposed to [pursuing] the much more likely suspect, Dennis Bruno, the Caucasian male" is conclusory and lacking in factual support. ECF No. 28 ¶ 62. Plaintiffs identify nothing that officers did or said when they arrested Elsayed, or on any other occasion, that would suggest that their actions were motivated by his race or religion. Accordingly, this claim fails. *See Jianjun Xie v. Oakland Unified Sch. Dist.*, No. C 12-02950 CRB, 2013 WL 812425, at \*4-5 (N.D. Cal. Mar. 5, 2013) (dismissing Title VI

7

discrimination claim where plaintiff alleged disparate treatment based on her race and ethnicity but provided no facts such as "overtly racially-motivated misconduct" or allegations that "other members of the protected class suffered similar mistreatment"). The Palo Alto Police Department's history of racial profiling, without any specific facts suggesting discriminatory intent on the part of the officer defendants, also is not enough.

The Third Claim for Relief is DISMISSED without prejudice.

### D. First and Fourteenth Amendment Familial Interference Claims

Plaintiffs' Sixth Claim for Relief alleges that executing Elsayed's arrest warrant at night, in his home, in front of his developmentally disabled daughter amounted to unwarranted state interference into their parent/child relationship. *See* ECF No. 28 ¶¶ 86-87. Defendants attack this claim by contending that Elsayed's allegations "based on an unreasonable search and seizure may only be brought under the Fourth Amendment."[2] ECF No. 29 at 9.

"Claims [can properly be brought] under both the First and Fourteenth Amendment for unwarranted interference with the right to familial association." *Keates v. Koile*, 883 F.3d 1228, 1236 (9th Cir. 2018). At the same time, "there is no mistaking the holding of *Graham v. Connor*" – that an individual alleging excessive force during arrest may do so only under the Fourth Amendment. *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991). But "[w]hile the person who claims excessive force was directed at him or her can only raise a Fourth Amendment claim, a parent who claims loss of the companionship and society of his or her child, or vice versa, raises a different constitutional claim"). *Id*. Thus, Mashallah's claim for unwarranted familial interference at least remains viable. Indeed, Defendants clarify in their reply brief that they do not challenge Mashallah's claims – only Elsayed's claims based on the familial interference caused by his own allegedly excessive arrest. ECF No. 32 at 7.

The Court thus GRANTS Defendants' motion to dismiss as to Elsayed's First and Fourteenth Amendment claims in Plaintiffs' Sixth Claim for Relief. These claims are dismissed

---

[2] Similarly, Defendants attack the First Claim for Relief by mistakenly arguing that Plaintiffs have improperly based it on the First Amendment. ECF No. 29 at 9. But Plaintiffs' First Claim for Relief is based on the Fourth and Fourteenth Amendments only. *See* SAC at 2.

with prejudice because further leave to amend would be futile. As to Mashallah's claims the motion is DENIED.

## CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss. Plaintiffs' Fourteenth Amendment claim in the First Claim for Relief is dismissed with prejudice; Plaintiffs' Second Claim for Relief is dismissed with prejudice in its entirety; and the Third Claim for Relief is dismissed without prejudice. The Sixth Claim for Relief is dismissed with prejudice, but only as to Elsayed, not Mashallah. The motion to dismiss is denied with respect to the remaining claims.

Plaintiffs may amend their complaint within 30 days solely for the purpose of curing the deficiencies identified in this order. Amendment for any other reason requires a motion for leave to amend.

**IT IS SO ORDERED.**

Dated: November 8, 2018

JON S. TIGAR
United States District Judge